COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-08-152-CR

 

 

TRACY DENISE ROBERSON                                                             APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

              FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------








A
jury convicted Appellant Tracy Denise Roberson of manslaughter and assessed her
punishment at five years= confinement.  The trial court sentenced her
accordingly.  Appellant brings five
points, arguing that the evidence is both legally and factually insufficient to
support her conviction and challenging certain evidentiary rulings of the trial
court.  Because we hold that the evidence
is both legally and factually sufficient to support Appellant=s
conviction and that the trial court did not abuse its discretion by admitting
the challenged evidence, we affirm the trial court=s
judgment.

Facts

Appellant
was involved in a sexual relationship with Devin LaSalle.  Appellant=s
husband, Darrell Roberson, shot and killed LaSalle sometime after midnight in
the early morning hours of December 11, 2006, either before, when, or after
Appellant yelled to Darrell that she was being raped.  Those are the only facts that are clear and
unequivocal.  The remainder of the record
is conflicting and contradictory.

It
is unclear whether Darrell was aware of his wife=s
infidelity at the time he shot LaSalle. 
Darrell told detectives that he had driven to Oak Cliff in Dallas County
for a card game.  He said that Appellant
called him a little after midnight to tell him that the house phone had been
off the hook and that she was planning to take a bath.  The State argues that this was Appellant=s
attempt to buy herself Asome intimate time in the
car@
with LaSalle so that she could later claim to Darrell that the phone had been
off the hook if Darrell called and got no answer.








Darrell
nevertheless tried to call Appellant around 1:30 a.m. on the house phone and
got no answer because she was outside in LaSalle=s
vehicle.  Darrell then repeatedly called
the house phone, his daughters=
cell phones, and Appellant=s
cell phone for the next half hour between 1:38 a.m. and 2:12 a.m.  He told police that he became more and more
concerned when he could not reach anyone. 
Finally, he managed to reach his seven-year-old daughter, J.R., at 2:12
a.m.  She told Darrell that she could not
find her mother in the home.  Darrell
told J.R. to make sure that the front door was locked and started driving
toward home.  He continued to talk to
J.R. on the telephone as he drove.  As
Darrell drove up to his home, he saw LaSalle=s
truck parked in front of the house.

In
Darrell=s
videotaped interview, he admitted that his first suspicion as he drove up and
saw LaSalle=s
truck was that Appellant was with another man. 
Darrell told Detective Dishko that he did not see the man in the truck
when he drove up, but during the 911 telephone call reporting the shooting,
Darrell was overheard telling Appellant that he had seen LaSalle kissing her
breasts.

In
her interview, Appellant indicated that she saw Darrell get out of his vehicle
with a gun in his hand.  She told
investigators, 

So
when the car just stopped, the one that=s in front of us, I see it=s Darrell, so I start
screaming, ADarrell, Darrell,
Darrell, he=s trying to rape me,
he=s trying to rape me,
he=s trying to rape me.@  But by then, Darrell is out of the
Expedition, he has a gun, he=s telling the person
to stop.

 

After further questioning,
Appellant changed her story slightly regarding whether Darrell was armed when
he got out of his truck.








Detective
Dishko testified that Appellant told him that Darrell had a Avery,
very, very violent temper.@  Detective Dishko testified that Appellant
told him that when she and LaSalle saw Darrell, LaSalle said AOh,
shit,@ and
immediately shifted into reverse gear, backing up the truck at a high rate of
speed, laying rubber.  Detective Dishko
stated that Darrell=s shoes, pants, and shirt
all had rubber on them, which indicated that Aat
some point in time he was in the vehicle=s
path [while] the tires were spinning, [and] the rubber was flying on him.@  Appellant told Detective Dishko that she
moved down onto the floorboard before the shot. 
Appellant also told investigators that Darrell had yelled at her to get
out of LaSalle=s
truck and accused her of cheating on him when she got out of the truck after
Darrell had shot LaSalle.

Both
Appellant and Darrell agreed that Appellant began to scream rape while she was
still in LaSalle=s truck.  The two also appeared to agree that Darrell
did not begin firing at the truck until after he heard Appellant yell that
LaSalle was raping her.  During her
interview, however, the officers pointed out to Appellant that she was in the
line of Darrell=s fire and in danger of
being shot.

And
Appellant stated in another interview that she believed Darrell shot at the
truck not because she was being raped but because he was angry.  Further, while Darrell told investigators
that he fired in response to Appellant=s
cries of rape, Detective Dishko testified that it did not appear from the 911
recording that Darrell believed that LaSalle was attempting to rape Appellant,
and Detective Dishko also testified that he believed that Darrell was a jealous
man.

Barry
Dickey, a forensic analyst, testified that two conversations were occurring
during the 911 call reporting the shooting. 
He testified that Appellant and Darrell did not appear to be
collaborating or colluding with one another during the call, but rather they
appeared to be arguing during the first five minutes of the call.








Legal and Factual
Sufficiency of the Evidence

In
her first point, Appellant contends that the evidence is legally insufficient
to sustain her conviction.  In reviewing
the legal sufficiency of the evidence to support a conviction, we view all of
the evidence in the light most favorable to the prosecution in order to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.[2]  Appellant was charged by indictment with 

recklessly
caus[ing] the death of Devin LaSalle by causing Darrell Roberson to shoot Devin
LaSalle by falsely accusing Devin LaSalle of attempting to rape her.  The Defendant=s false accusation
was reckless because it was made at a time when she knew that Darrell Roberson
was armed with a firearm and Darrell Roberson, upon hearing the Defendant=s false accusation,
did cause the death of Devin LaSalle by shooting him with a deadly weapon, to
wit: a firearm[,]

 

and, in paragraph two, with
criminally negligent homicide under the same circumstances.  The jury convicted Appellant of manslaughter
by recklessly causing LaSalle=s
death.

While
this is an unusual approach to a manslaughter accusation, it is supported by
the law.  A person commits the offense of
manslaughter if he recklessly causes the death of an individual.[3]  The penal code provides that 








[a] person acts recklessly,
or is reckless, with respect to circumstances surrounding his conduct or the
result of his conduct when he is aware of but consciously disregards a
substantial and unjustifiable risk that the circumstances exist or the result will
occur.  The risk must be of such a nature
and degree that its disregard constitutes a gross deviation from the standard
of care that an ordinary person would exercise under all the circumstances as
viewed from the actor=s standpoint.[4]

The issue of causation is
addressed in section 6.04 of the penal code:

(a)
A person is criminally responsible if the result would not have occurred but
for his conduct, operating either alone or concurrently with another cause,
unless the concurrent cause was clearly sufficient to produce the result and
the conduct of the actor clearly insufficient.

 

(b)
A person is nevertheless criminally responsible for causing a result if the
only difference between what actually occurred and what he desired,
contemplated, or risked is that:

 

(1) a different offense was committed; or

 

(2)
a different person or property was injured, harmed, or otherwise affected.[5]

 








The
jury was presented with a swearing match. 
Either Darrell shot and killed LaSalle because he was angry over the
adulterous relationship between his wife and LaSalle, or he shot and killed
LaSalle in response to Appellant=s
cries of rape; that is, he acted in defense of a third person.  The jury chose to believe that Darrell shot
and killed LaSalle in response to Appellant=s
shouts of rape. The jury also chose to believe that Appellant knew that Darrell
had a hot temper and saw or knew that Darrell was armed when she created the
unjustifiable risk that he would shoot LaSalle. 
Applying the appropriate standard of review, we hold that the evidence
is legally sufficient to support Appellant=s
conviction and overrule her first point.

In
her second point, Appellant contends that the evidence is factually
insufficient to sustain her conviction. 
When reviewing the factual sufficiency of the evidence to support a
conviction, we view all the evidence in a neutral light, favoring neither
party.[6]  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s
determination is manifestly unjust.[7]  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, although legally sufficient, contradicts the
verdict.[8]

Unless
we conclude that it is necessary to correct manifest injustice, we must give
due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@[9]  Evidence is always factually sufficient when
it preponderates in favor of the conviction.[10]








Applying
the appropriate standard of review for factual sufficiency, we hold that the
evidence is not so weak that the verdict is clearly wrong and manifestly
unjust, nor does the conflicting evidence so greatly outweigh the evidence
supporting the conviction that the verdict is manifestly unjust.[11]  We therefore overrule Appellant=s
second point.

Admissibility of the Text
Message

In
her third point, Appellant argues that the trial court abused its discretion by
admitting State=s Exhibit 57, a text message
purportedly sent by Appellant to LaSalle. 
The message, in part, is AYes,
please . . . ONLY ONE REQUEST, cum on my back and let it flow into my butt!
PLEASE!@

Below,
Appellant objected under rule 403[12]
that the exhibit was not relevant and was offered strictly for its prejudicial
value and that the prejudicial value would clearly outweigh the probative
value.  The trial court overruled the
objection.  Appellant later objected
based on rule 403 Athat [she] previously
ma[de].@  The trial court also overruled that
objection.  Appellant reiterates these
complaints on appeal.  She also argues
that the trial court failed to perform the required balancing test to determine
whether the probative value outweighed the prejudice as required by rule 403
and Montgomery v. State.[13]








Appellant
also raises a rule 404 complaint on appeal; however, our review of the record
does not reveal any objection below to State=s
Exhibit 57 based on rule 404.  That
complaint was therefore not preserved.[14]








Rule
403 provides that relevant evidence Amay
be excluded if its probative value is substantially outweighed by the danger of
unfair prejudice, confusion of the issues, or misleading the jury, or by considerations
of undue delay, or needless presentation of cumulative evidence.@[15]  Evidence is unfairly prejudicial when it
unduly suggests that the factfinder reach a decision on an improper basis, often
emotional.[16]  If a trial court determines that evidence is
relevant and a timely, proper rule 403 objection is made, then the trial court
must perform a balancing test under rule 403.[17]  The trial court is not required, however, to
perform the balancing test on the record; when the record is silent, we presume
that the trial court preformed the appropriate balancing test.[18]  In fact, article 38.05 of the Texas Code of
Criminal Procedure states that A[i]n
ruling upon the admissibility of evidence, the judge shall not discuss or comment
upon the weight of the same or its bearing in the case, but shall simply decide
whether or not it is admissible.@[19]  In performing the balancing test, the trial court

must
balance (1) the inherent probative force of the proffered item of evidence
along with (2) the proponent=s need for that
evidence against (3) any tendency of the evidence to suggest decision on an
improper basis, (4) any tendency of the evidence to confuse or distract the
jury from the main issues, (5) any tendency of the evidence to be given undue
weight by a jury that has not been equipped to evaluate the probative force of
the evidence, and (6) the likelihood that presentation of the evidence will
consume an inordinate amount of time or merely repeat evidence already
admitted.[20]

 

We
review a trial court=s decision under rule 403
for an abuse of discretion.[21]  That decision will be upheld if correct on
any theory of law applicable to the case, even if the trial court=s
underlying reason for the decision is wrong.[22]








The
State argued below that State=s
Exhibit 57 is admissible as proof of the nature of Appellant=s
relationship with LaSalle and to show Ajust
how reckless [Appellant] was in [fabricating the rape allegation].@  The State also argued below that the text
message was necessary to its case because Appellant never admitted her sexual
relationship with LaSalle in either of her statements to the police.  The State reiterates those arguments on
appeal and also contends that State=s
Exhibit 57 helped the jury to understand the recklessness of Appellant=s
rape claim in light of her relationship with LaSalle. 

Appellant
specifically argues that not only was State=s
Exhibit 57 unfairly prejudicial, it confused the issues and was unnecessarily
cumulative.  She also argues that there
is no proof that she actually sent the message. 
Although the State concedes that the trial court admitted several other
text messages that Appellant had sent to LaSalle, as well as photographs that
Appellant had sent to LaSalle=s
phone of her in her underwear, the State argues that State=s
Exhibit 57 was the only direct communication from Appellant to LaSalle that
tended to establish that the two were in a consensual sexual relationship.  The State argues that the text message Amade
Appellant=s
complete callousness for the victim as evidenced through her rape allegation
against him crystal clear.@








In
light of the record before this court, we cannot say the trial court abused its
discretion in determining that the State needed the jury to be aware of the
challenged exhibit to defeat a possible defense claim that, although she had
flirted suggestively with LaSalle, Appellant never suggested, intended, engaged
in, or led LaSalle to believe that she wanted a physically sexual relationship
with him.  The trial court could have
properly concluded that the State needed the message before the jury to
establish the consensual sexual relationship between Appellant and LaSalle in
order to show that her shouting rape was a reckless act that she should have
realized would likely elicit a violent response from Darrell, whom she knew
carried a firearm, and not a true cry for help. 
Because we hold that the trial court did not abuse its discretion by
admitting State=s Exhibit 57, we overrule
Appellant=s
third point.

Admissibility of Darrell=s
Statement

In
her fourth and fifth points, Appellant argues that the trial court erred in
admitting Darrell=s statement, State=s
Exhibit 37A, in violation of her rights as guaranteed under the Sixth Amendment
to the Constitution of the United States,[23]
as interpreted by the United States Supreme Court in Crawford v. Washington,[24]
and in violation of her rights as guaranteed under article I, section 10 of the
Texas Constitution.[25]  Darrell=s
statements were hearsay.  Because the
statements were offered without his being present for purposes of confrontation
and cross-examination, their admission does not afford Appellant the
confrontation rights guaranteed her under the federal and state constitutions.[26]  When, however, other portions of an inadmissible
statement are offered either without objection or by the defendant, the
remainder of the statement may be admissible.[27]








Appellant
questioned Detective Dishko about the contents of Darrell=s
statement during her cross-examination of the detective.  Afterward, the trial court admitted Darrell=s
statement in its entirety under rule 107 of the Texas Rules of Evidence, the
rule of optional completeness, which provides,

When part of an act, declaration,
conversation, writing or recorded statement is given in evidence by one party,
the whole on the same subject may be inquired into by the other, and any other
act, declaration, writing or recorded statement which is necessary to make it
fully understood or to explain the same may also be given in evidence, as when
a letter is read, all letters on the same subject between the same parties may
be given.  AWriting or recorded
statement@ includes
depositions.[28]

 

Because Appellant presented
a portion of Darrell=s statement to the jury
through Detective Dishko, the State was entitled to offer the remainder of his
statement.








Additionally,
the State argues that the evidence Appellant complains of was admitted
elsewhere without objection through Appellant=s
own videotaped statement, which was published for the jury before Darrell=s
statement was admitted in its entirety.[29]  Darrell=s
statement is essentially a factual recitation of his attempts to reach
Appellant by telephone, his attempts to call his daughters, his arrival at
home, and his shooting of LaSalle.  The
portion that is not a mere factual recitation describes Darrell=s
thought processes.  When he first arrived
home, he thought that a man had come to his home while he was gone and that his
wife was in the car with him.  It was not
until she yelled that the man was trying to rape her that Darrell took his gun
out of the console and got out of his Expedition with the gun.  He said that he did not start shooting until
LaSalle backed up and attempted to leave with Appellant in the truck and that
he shot to protect her.  At the same
time, Darrell admitted that he thought that it was suspicious that Appellant
was sitting in the passenger seat while LaSalle was leaning down below the
dashboard and not visible to Darrell.








During
Appellant=s
videotaped interview, she finally admitted that she had asked LaSalle to come
over because she wanted to feel his Awarm
embrace.@  She was wearing only a robe and panties when
she went outside with him to his truck. 
Although she claimed initially that they were merely friends, she
finally admitted to a special relationship with LaSalle that involved emailed
pictures of her in her underwear and sexual cartoons.  She said that she was afraid of her husband
because of his violent temper and stated that that was the reason she cried out
that she was being raped when Darrell pulled up in his Expedition.  She admitted that Darrell=s
first words to her when he got out of the Expedition were for her to Aget
[her] ass out of that car@ and AI
can=t
believe you=re
fucking off on me.@  During her interview, the officer also
reminded Appellant that J.R. had told Darrell during their telephone
conversation that she heard a knock at the door and a man=s
voice, that Appellant had gone outside with the man, and that she was wearing
her robe.

Appellant
told the officers that when Darrell pulled up, his lights were on bright.  She said that he immediately put the Expedition
in park, jumped out, and yelled at her to Aget
[her] ass out of that car.@  In response to police questioning, Appellant
admitted that she did not believe that Darrell was trying to rescue her from
danger.  But when the police suggested
that Darrell was trying to shoot her, she said that he was shooting at anybody
because he was angry.

Appellant
admitted that Darrell checked all her telephone calls and text messages and
that she had gotten a prepaid phone to talk to LaSalle.  But she also said that she had thrown that
phone away.  She also insisted that
LaSalle was different that night and that he did grab her and pull her outside
when he came to her door.  The police
pointed out that J.R. denied hearing her scream.  Appellant insisted that LaSalle was drinking
that night and was not himsel6f.

She
said that although she yelled that she was being raped, the windows of the
truck were rolled up.  She said that she
screamed rape in the truck and after she was out of the truck.  But she also stated that Darrell shot because
he was angry and never believed the rape allegation.  She also admitted that she had lied to the
police about what happened because she was afraid of Darrell and afraid of what
he would do to her if he found out that she was involved with LaSalle. 








The
police played the 911 tape for Appellant and showed her a transcription of
it.  It is apparent from the recording of
the 911 tape that Darrell and Appellant were arguing about what she was doing
in LaSalle=s
truck and that she was trying to convince Darrell that LaSalle was trying to
rape her.  Darrell admitted in his
statement that when he was inside the house, sitting at the kitchen table, he
decided that Appellant had been lying to him about the rape attempt.

Darrell=s
statement was admissible both under the rule of optional completeness and
because the same evidence was admitted through Appellant=s
statements and the 911 recording.  We
therefore hold that the trial court did not abuse its discretion by admitting
the remaining portions of Darrell=s
statement.  We overrule Appellant=s
fourth and fifth points.

Conclusion

Having
overruled Appellant=s five points, we affirm the
trial court=s
judgment.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 5, 2010











[1]See Tex. R. App. P.
47.4.





[2]Jackson v. Virginia, 443 U.S. 307, 319,
99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007).





[3]Tex. Penal Code Ann. ' 19.04 (Vernon
2003).





[4]Id. ' 6.03(c).





[5]Id. ' 6.04.





[6]Steadman v. State, 280 S.W.3d 242, 246
(Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006).





[7]Steadman, 280 S.W.3d at 246; Watson,
204 S.W.3d at 414B15, 417.





[8]Watson, 204 S.W.3d at 417.





[9]Johnson v. State, 23 S.W.3d 1, 9
(Tex. Crim. App. 2000); see Steadman, 280 S.W.3d at 246.





[10]Steadman, 280 S.W.3d at 247; see
Watson, 204 S.W.3d at 417.





[11]See Steadman, 280
S.W.3d at 246; Watson, 204 S.W.3d at 414B15, 417.





[12]See Tex. R. Evid. 403.





[13]810 S.W.2d 372, 389
(Tex. Crim. App. 1991) (op. on reh=g).





[14]See Tex. R. App. P.
33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998)
(op. on reh=g), cert. denied,
526 U.S. 1070 (1999).





[15]Tex. R. Evid. 403.





[16]Montgomery, 810 S.W.2d at 389.





[17]Id. at 388B89.





[18]Williams v. State, 958 S.W.2d 186, 195B96 (Tex. Crim. App.
1997).





[19]Tex. Code Crim. Proc.
Ann. art. 38.05 (Vernon 1979).





[20]Gigliobianco v. State, 210 S.W.3d 637, 641B42 (Tex. Crim. App.
2006).





[21]Moses v. State, 105 S.W.3d 622, 627
(Tex. Crim. App. 2003).





[22]Romero v. State, 800 S.W.2d 539, 543B44 (Tex. Crim. App.
1990).





[23]U.S. Const. amend.
VI.





[24]541 U.S. 36, 124 S.
Ct. 1354 (2004).





[25]Tex. Const. art. I, ' 10.





[26]See U.S. Const. amend.
VI; Tex. Const. art. I, ' 10; Crawford,
541 U.S. at 53B54, 124 S. Ct. at
1365.





[27]Chamberlain v. State, 998 S.W.2d 230, 235
(Tex. Crim. App. 1999), cert. denied, 528 U.S. 1082 (2000); Etheridge
v. State, 903 S.W.2d 1, 13 (Tex. Crim. App. 1994), cert. denied, 516
U.S. 920 (1995).





[28]Tex. R. Evid. 107.





[29]See Leday v. State,
983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (A trial court=s erroneous admission
of Aevidence will not
result in reversal when other such evidence was received without objection,
either before or after the complained-of ruling.@).